**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(ALEXANDRIA DIVISION)**

| | |
|---|---|
| TRAMONTANE IP, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| | : C.A. No. 1:11-cv-00918 (LMB/TCB) |
| v. | : |
| | : |
| GARMIN INTERNATIONAL, INC., | : |
| et al., | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM IN SUPPORT OF DEFENDANT PIONEER**
**ELECTRONICS (USA), INC.'S MOTION TO SEVER AND TRANSFER**

Bradford Hardin, Jr. (Va. Bar No. # 76812)
Grant K. Rowan (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR, LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
bradford.hardin@wilmerhale.com
grant.rowan@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Patrick M. Callahan (*pro hac vice*)
Thaila K. Sundaresan (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR, LLP
60 State St.
Boston, MA 02109
(617) 526-6000
michael.summersgill@wilmerhale.com
patrick.callahan@wilmerhale.com
thaila.sundaresan@wilmerhale.com

*Attorney for Pioneer USA Electronics (USA), Inc.*

Dated: November 3, 2011

I.   INTRODUCTION ............................................................................................1

II.  FACTS ........................................................................................................3

   A.  Tramontane's Claims Against Pioneer USA Are Different From Its Claims
       Against The Remaining Defendants. ...............................................................3

   B.  None of the Parties Has Any Genuine Connection to the Eastern District of
       Virginia ...................................................................................................4

      1.  Tramontane ........................................................................................4

      2.  Pioneer USA ......................................................................................6

      3.  The Remaining Defendants ...................................................................6

   C.  None of the Events Giving Rise to This Litigation Took Place in the Eastern
       District of Virginia ....................................................................................7

      1.  Development of the Pioneer USA Accused Products ....................................7

      2.  Conception of the Alleged Invention and Prosecution of the '268 Patent ..........7

   D.  All But One of the Known and Possibly Relevant Third Party Witnesses Are
       Located Outside the Eastern District of Virginia. ...............................................8

III. ARGUMENT ...............................................................................................10

   A.  Pioneer USA Is Misjoined With The Other Defendants And Should Be Severed. ...........10

      1.  Tramontane's Infringement Allegations Against Pioneer USA Do Not Arise From the
          Same Transaction Or Occurrence As The Infringement Allegations Against The
          Remaining Defendants. .........................................................................10

      2.  Forcing Pioneer USA to Litigate With Multiple, Different Defendants Would Limit
          Pioneer USA's Ability to Fully Defend Itself and Will Not Enhance Efficiency. ...........16

      3.  Joining Pioneer USA and the Remaining Defendants Risks Significant Juror Confusion. 18

   B.  Once Severed, Tramontane's Claims Against Pioneer USA Should be Transferred
       to the Central District of California. ................................................................21

      1.  Tramontane Could Have Filed This Action in the Central District of California. ...........22

      2.  The Four Venue Factors Favor Transfer to Central District of California. ....................22

IV.  CONCLUSION ............................................................................................30

Defendant Pioneer Electronics (USA), Inc. ("Pioneer USA") respectfully requests that this Court sever Tramontane IP, LLC's ("Tramontane") claims against Pioneer USA and transfer those claims to the Central District of California.

## I.    <u>INTRODUCTION</u>

Tramontane – a patent holding company that incorporated in this district fewer than four months before filing this action – accuses *five different* companies of infringing U.S. Patent No. 6,526,268 ("the '268 patent").[1]   The other accused defendants include a range of companies that provide products different from those offered by Pioneer USA.   Critically, Tramontane does not (and cannot) allege in its complaint that Pioneer USA's alleged acts of infringement of the '268 patent are in any way related to the alleged acts of infringement committed by any of the other defendants.   Instead, Tramontane effectively concedes that its case against Pioneer USA is different by accusing three of the four remaining defendants of infringing an additional patent, U.S. Patent No. 7,133,775 (the '775 patent), that is not asserted against Pioneer USA.

Combining multiple different defendants in a single action, as Tramontane attempts to do here, is improper for at least three reasons:   *First*, it violates the requirement (which Congress recently reaffirmed) that claims asserted against parties joined in the same action must "aris[e] out of the *same* transaction, occurrence, or series of transactions or occurrences."   Fed. R. Civ. P. 20.   *Second*, by making Pioneer USA only one of five different defendants, joinder will limit Pioneer USA's ability to present an individualized defense.   *Third*, joinder risks significant juror confusion because no jury can reasonably be expected to keep straight the five different defendants, the five different accused products, and their different defenses.   Accordingly,

---

[1]      While there are six named defendants, two of them, Garmin International and Garmin USA, appear to be related entities.   Accordingly, for the purposes of this motion, Pioneer USA will consider there to be five different defendants.

Tramontane's claims against Pioneer USA should be severed from Tramontane's remaining claims.

Once severed, the case against Pioneer USA should be transferred to the Central District of California.  Neither Tramontane nor Pioneer USA has any relevant connection to the Eastern District of Virginia:

- Pioneer USA has no offices, warehouses, or other infrastructure in Virginia, and is instead based in Long Beach, California, which is located in the Central District of California;

- Neither Tramontane nor Pioneer USA has any relevant business operations in Virginia;

- None of the relevant Pioneer USA witnesses or documents are located in Virginia, but are instead located primarily in the Central District of California;

- Reports list the residence of Tramontane's only known witness – its CEO – ***not*** in the Eastern District of Virginia, but instead in the Central District of California;

- The two named inventors and three prosecuting attorneys of the only patent asserted against Pioneer USA do not reside in the Eastern District of Virginia;

- The center of the accused activity is not in Virginia, but is instead in the Central District of California; and

- Virginia has no particular interest in the outcome of this litigation.

Tramontane's only purported basis for bringing its claims against Pioneer USA in the Eastern District of Virginia – its May 2011 incorporation in Virginia and the payment of a monthly fee for "virtual office space" in Alexandria – is wholly insufficient to establish the required connection to this district.

Courts in this district have consistently refused to allow plaintiffs to bring cases with no genuine connection to the Eastern District of Virginia solely in an attempt to take advantage of its reputation as a "rocket docket":

> When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the

> "rocket docket," the interest of justice 'is not served.  In fact, the Court's
> concern with being swamped with patent infringement cases is legitimate.
> — Left unchecked, allowing lawsuits with such a minimal connection to
> the district to go forward here would result in docket overloads, unfairly
> slowing the cases for parties with genuine connections to this district.[2]

Tramontane's decision to file suit in the Eastern District of Virginia is a transparent attempt to

leverage this district's well-known, fast-paced docket for its own strategic gain.  Accordingly,

Pioneer USA respectfully requests that the Court sever Tramontane's claims against Pioneer

USA and transfer this action to the Central District of California.

## II.   FACTS

### A.   Tramontane's Claims Against Pioneer USA Are Different From Its Claims Against The Remaining Defendants.

Tramontane's complaint alleges infringement of two patents, U.S. Patent No. 6,526,268

("Mobile Weather Band Radio and Method") and U.S. Patent No. 7,133,775 ("Previewing Points

of Interest in Navigation Systems").  While the majority of the defendants (Garmin International,

Garmin USA, Magellan, and Tom Tom) are accused of infringing claims of both patents, Pioneer

USA is accused of infringing only the '268 patent.

Pioneer USA's parent corporation began developing navigation technology in the late

1980s.  Over the last two decades, Pioneer USA's parent has invested thousands of engineer

hours and tens of millions of dollars in research and development in order to develop and

manufacture navigation systems like the Avic Z130BT identified in the Tramontane complaint.

The result of this expensive and time-consuming process is navigation systems, like the accused

Avic Z130BT, that incorporate proprietary features that compete with devices such as those

offered by codefendants like Garmin and Tom Tom.  (Pioneer Aff. ¶ 7).

---

[2]      *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011).
(internal citation omitted).

The multiple defendants in this case include a range of companies that offer a range of different products, including navigation systems.  A review of the products identified in Tramontane's complaint, each offered by a different defendant, reveals several differences.  For example, at a high level, Pioneer USA's Avic Z130BT (Compl. ¶ 15) is an in-dash device used in automobiles, whereas the accused products associated with the remaining defendants (Garmin's nuvi 2460 LMT, Magellan's Roadmate 5045 LM, Mio's Moov R503T, and TomTom's VIA 1535 TM) are all portable handheld systems.  On a more detailed level, examination of the software used by the different defendants will show that each uses their own proprietary code to process location information and other data inputs.

Indeed, the complaint does not allege – and cannot allege – that Pioneer USA and any of the five codefendants:  (1) sell the same products;  (2) developed their accused products in concert; or (3) acted in concert with each other to infringe either patent.  Instead, the complaint simply accuses the different defendants' six different "navigation systems" of infringing some unidentified number of the 70 claims included in the two asserted patents.  The complaint does not specify which claims of which patent are infringed by any of the products identified.  Nor does it identify what feature or features of these potentially accused products allegedly infringe the asserted patents.

   **B.    None of the Parties Has Any Genuine Connection to the Eastern District of Virginia**

      **1.    Tramontane**

Tramontane, a non-practicing entity whose only business appears to be monetizing patents, incorporated in Virginia fewer than four months before filing this action.  Ex. 1 at 2

(Lexis Report on Tramontane, "Date Incorporated: 05/18/11"); Callahan Aff. at ¶ 2.[3]

Approximately eight weeks later, on July 11, 2011, it acquired the two patents-in-suit via

assignment from Delphi Technologies, a company based in Michigan.  Ex. 2 at frames 271-74

(Excerpts of '268 Patent Assignment Record).  By at least July 18, 2011, it had hired Texas-

based "IP Navigation Group" to act as its "*monetization advisor*" with respect to the asserted

patents.  Ex. 3 at 1 (9/19/11 Tramontane Press Release); Ex. 4 (7/18/11 IPNavigation letter to

Pioneer USA discussing Tramontane patents).  As IP Navigation openly states on its website, its

objective is making money from patents:  "Simply stated, IPNav's expertise is monetizing

patents."  Ex. 5 (http:www.ipnav.com).

    Despite its incorporation in this district, Tramontane has no real business operations in

the Eastern District of Virginia.  Instead, it maintains a "virtual office" in Alexandria by paying a

monthly fee (not rent) to share a single suite address with at least twenty other companies.  Ex. 6

at 2 (screenshots of DaVinci Virtual Office website); Ex. 7 (photographs of lobby directory

listing of 20 companies – not including Tramontane – that share Suite 100, 2331 Mill Road,

Alexandria Virginia, where Tramontane claims to have its "principal place of business"

according to the complaint)).  In addition, according to public records, Tramontane's only known

employee – its CEO Douglas B. Croxall – has a residence in the Central District of California,

not the Eastern District of Virginia.  Ex. 8 (Lexis Report on Douglas B. Croxall).[4]

---

[3]    References to "Ex. __" correspond to exhibits attached to the Patrick Callahan's Affidavit In Support of Pioneer Electronics (USA), Inc.'s Motion to Sever and Transfer filed herewith.  In certain instances, the pertinent portion of each cited exhibit has been highlighted for the Court's convenience.
[4]    During the parties' meet and confer regarding this motion, counsel for Tramontane stated that Mr. Croxall was located in Virginia.  (Callahan Aff. at ¶ 2).  Pioneer USA's research uncovered no addresses for Mr. Croxall in Virginia.  The Lexis Report for Douglas Croxall that Pioneer USA was able to obtain lists 17 different addresses for Mr. Croxall in Los Angeles County, which is within the Central District of California.  Ex. 8 (Lexis Report on Douglas B. Croxall).  Two of those addresses were current as of September 2011 – one month *after* the complaint was filed in this case. (*Id.*)  The report listed no addresses for Mr. Croxall anywhere in Virginia. (*Id.*).

## 2.      Pioneer USA

Pioneer USA is a Delaware corporation and maintains its corporate headquarters in Long Beach, California.  (Pioneer USA Aff. ¶ 2).  Pioneer USA has no offices, warehouses, distribution centers, or any other infrastructure in the Eastern District of Virginia.  (Pioneer USA Aff. ¶¶ 3-4).  Nor does it have any bank accounts or telephone listings in the Eastern District of Virginia.  (Pioneer USA Aff. ¶¶ 6-7).

The vast majority of Pioneer USA's relevant witnesses and documents are located in California.  Of the company's 228 employees, 192 of them work out of the company's Long Beach headquarters.  (Pioneer USA Aff. ¶ 8).  Those responsible for the sale and marketing of Pioneer USA's navigation systems are located primarily in California.  (Pioneer USA Aff. ¶ 12).  While there are two Pioneer USA employees located in Virginia, one of them has no involvement with the navigation systems sold by Pioneer USA.  The other is one of over twenty sales managers who deal not only with navigation devices, but also with dozens of car electronics products having nothing to do with navigation systems.  Not surprisingly, Pioneer USA's documents, including documents relating to the operation, sale and marketing of its navigation systems, are maintained at Pioneer USA's Long Beach, California headquarters. (Pioneer USA Aff. ¶ 13).

## 3.      The Remaining Defendants

None of the remaining defendants – Garmin USA, Garmin International, Mio, TomTom, or Magellan – are Virginia corporations or have principal places of business in Virginia. According to Tramontane's complaint, Defendant Magellan is a California corporation with a principal place of business in Santa Clara, California.  (Compl. ¶ 4).  Defendant Mio Technology is a California corporation with a principal place of business in Fremont, California.

(Compl. ¶ 5).  Defendants Garmin International, Inc. and  Garmin USA are Kansas corporations with their principal places of business in Kansas.  (Compl.  ¶¶ 2-3).   And defendant TomTom, Inc. is a Massachusetts corporation with a principal place of business in Massachusetts.  (Compl. ¶ 7).

### C.   None of the Events Giving Rise to This Litigation Took Place in the Eastern District of Virginia

#### 1.   Development of the Pioneer USA Accused Products

Tramontane's complaint does not allege any connection between the development, manufacture or assembly of any Pioneer USA navigation system and the Eastern District of Virginia.  (Compl. ¶ 15).  Nor could it.  Pioneer USA navigation systems, like the Avic Z130BT identified in the complaint, are developed, manufactured and assembled outside the United States.  (Pioneer USA Aff.  ¶ 11).   The sale and marketing of these navigation systems are coordinated from Pioneer USA's headquarters in Long Beach, California.  (Pioneer USA Aff.  ¶ 12).

#### 2.   Conception of the Alleged Invention and Prosecution of the '268 Patent

The named inventors of the '268 patent – Harry Diamond and Jeffrey Marrah – both lived in Indiana at the time they applied for the '268 patent and, based on publicly available information, are believed to still live in that state. Ex. 9 ('268 Patent); Ex. 12 (Lexis Reports for Harry Diamond and Jeffrey Marrah).  Shortly after filing the application leading to the '268 patent, Diamond and Marrah assigned the application to their employer, Delphi Technologies, Inc., a company then based in Troy, Michigan.   Ex. 2 at frames 664-65 (Excerpts of '268 Patent Assignment Record).  The three patent attorneys who prosecuted the '268 patent are located in Indiana and Michigan. Ex. 10 at 2, 4, 24 (Excerpts of '268 Patent File History (identifying

prosecuting attorneys Jimmy L. Funke, Kevin T. Grzelak, and Stefan V. Chmielewski); Ex. 13

(USPTO registration information for Stefan V. Chmielewski (Perrysburg, OH), Jimmy L. Funke

(Troy, MI) and Kevin T. Grzelak (Grand Rapids, MI)).

> **D.     All But One of the Known and Possibly Relevant Third Party Witnesses Are Located <u>Outside</u> the Eastern District of Virginia.**

Although discovery has not yet begun, there are a number of known third-parties who

may have information relevant to this case.  All but one of them reside *outside* the Eastern

District of Virginia.  The following nine individuals or entities involved in the prosecution and/or

attempted licensing of the '268 patent, for instance, all reside outside the Eastern District of

Virginia:

| <u>NO.</u> | <u>NAME</u> | <u>RELEVANCE</u> | <u>LOCATION</u> |
|---|---|---|---|
| 1 | Kevin T. Grzelak | One of three patent attorneys responsible for prosecution of the application leading to the '268 patent, Application No. 09/390,794 Ex. 10 (Excerpts of '268 File History) | Grand Rapids, MI |
| 2 | Jimmy L. Funke | One of three patent attorneys responsible for prosecution of the application leading to the '268 patent, Application No. 09/390,794 Ex. 10 (Excerpts of '268 File History) | Troy, MI |
| 3 | Stefan V. Chmielewski | One of three patent attorneys responsible for prosecution of the application leading to the '268 patent, Application No. 09/390,794 Ex. 10 (Excerpts of '268 File History) | Perrysburg, OH |
| 4 | Jeffrey Joseph Marrah | Named inventor of the '268 patent Ex. 12 (Lexis Report on Jeffrey Marrah) | Kokomo, IN |
| 5 | Harry Diamond | Named inventor of the '268 patent Ex. 12 (Lexis Report on Harry Diamond) | Tipton, IN |
| 6 | Delphi Technologies, Inc. | Original assignee of the patent | Troy, MI |

|   |   | application leading to the '268 patent, Application No. 09/390,794 Ex. 2 at frame 665 (Excerpts of '268 Patent Assignment Record) |   |
|---|---|---|---|
| 7 | Delco Electronics, Corporation, Inc. | Assignor of the '268 patent Ex. 2 at frame 221 (Excerpts of '268 Patent Assignment Record) | Kokomo, IN |
| 8 | IP Navigation Group LLC | The "patent monetization" firm hired by Tramontane to send out letters to potential licensees Ex. 3 (9/19/11 Tramontane Press Release); Ex. 4 (7/18/11 IPNav letter to Pioneer USA) | Dallas, TX |
| 9 | David Pridham | Chief Executive Officer for IP Navigation and purported "licensing advisor" to Tramontane Ex. 4 (7/18/11 IPNav letter to Pioneer USA) | Barrington, RI |

Pioneer USA's Answer and Counterclaim alleges, among other things, that the '268 patent is invalid based on prior art. Accordingly, the named inventors/authors of the prior art of record are likely to possess relevant discovery and could potentially be deposition or trial witnesses. Based on address information provided on the face of the prior art references, 31 of the 32 known prior art inventors are located *outside* the Eastern District of Virginia.

| PATENT | INVENTOR / AUTHOR | INVENTOR RESIDENCE |
|---|---|---|
| 4,031,467 A | Singleton, Jr.; Lewis | Amarillo, TX |
|  | Whitney; James M. | Amarillo, TX |
| 5,023,934 A | Wheeless; Jesse | San Antonio, TX |
| 5,144,440 A | Wignot; Leroy S. | Indianapolis, IN |
|  | Nortrup; Kevin E. | Indianapolis, IN |
| 5,390,237 A | Hoffman, Jr.; Robert H. | Nashville, TN |
|  | Marino; Armand R. | Marietta, GA |
|  | Hartman; Iliff N. | North Richland Hills, TX |
| 5,420,794 A | James; Robert D. | Silver Spring, MD |
| 5,434,565 A | Simon; Gary B. | Winchester, MA |
|  | Wartofsky; David | Fort Washington, MD |
| 5,574,999 A | Gropper; Daniel R. | Vienna, VA |

| | | |
|---|---|---|
| 5,685,786 A | Dudley; Douglas P. | West Bloomfield, MI |
| 5,724,316 A | Brunts; Randall T. | Carmel, IN |
| 5,771,484 A | Tognazzini; Bruce | Woodside, CA |
| 5,781,852 A | Gropper; Daniel R. | Vienna, VA |
| 5,978,738 A | Brown; Anthony | Oxon Hill, MD |
| 5,991,687 A | Hale; George H. | Naperville, IL |
| | Milleville; Andrew P. | Westmont, IL |
| | Berger; Alan D. | Winfield, IL |
| 6,018,699 A | Baron, Sr.; Robert O. | Huntsville, AL |
| | Thompson; Tom S. | Athens, AL |
| | Benson; Tony L. | Huntsville, AL |
| 6,133,853 A | Obradovich; Michael L. | San Clemente, CA |
| | Pirtle; John | Silverado, CA |
| | Dusek; Corena | Corona Del Mar, CA |
| 6,177,873 B1 | Cragun; Brian J. | Rochester, MN |
| 6,313,735 B1 | Higuchi; Norihiko | Shizuoka, Japan |
| GB 0779752 A2 | Bamburak, Michael D. | Columbia, MD |
| | Daly, John J. | Neshanic Station, NJ |
| | Lawrence, Christopher Gregory | Kirkland, WA |
| | Prise, Michael Edward | Kirkland, WA |
| | Raffel, Michael Allen | Redmond, WA |

## III.   ARGUMENT

Cases should be severed and transferred where, as here, (1) the plaintiff's claims against the moving defendant are unrelated to its claims against the other defendants, (2) neither the plaintiff nor the moving defendant has any genuine connection to the forum, and (3) the forum has little or no connection to the dispute.

### A.   Pioneer USA Is Misjoined With The Other Defendants And Should Be Severed.

#### 1.   Tramontane's Infringement Allegations Against Pioneer USA Do Not Arise From the Same Transaction Or Occurrence As The Infringement Allegations Against The Remaining Defendants.

Rule 20(a) joinder is only proper if the plaintiff can satisfy both prongs of the joinder test. Specifically, a plaintiff may join defendants in a single lawsuit only "if (A) any right to relief is asserted against them . . . with respect to or arising out of *the same* transaction, occurrence, or

series of transactions or occurrences; and (B) any question of law or fact common to all

defendants will arise in the action."   Fed. R. Civ. P. 20(a).

The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20.

*Adams v. Alliant Techsystems, Inc.,* 2002 WL 220934, at *2 (W.D. Va. Feb. 13, 2002) (finding

that "[p]laintiffs have not met their burden of showing that all of their claims are properly joined

under Rule 20(a)").   Cases should be severed where, as here, the plaintiff's claims against one

defendant are unrelated to its claims against the other defendants.   *See, e.g., Bear Creek Techs.,*

*Inc. v. RCN Commc'ns*, 2011 WL 3626787, at *5 (E.D. Va. Aug. 17, 2011); *Koh v. Microtek*

*Int'l, Inc*., 250 F. Supp. 2d 627, 640 (E.D. Va. 2003); *Advamtel, LLC, v. AT&T Corp*., 105 F.

Supp. 2d 507, 515 (E.D. Va. 2000).

Congress recently reaffirmed the requirement that joined claims must arise from the

"same transaction or occurrence" by passing the America Invents Act, which recognized and

addressed the "problems occasioned by the joinder of defendants (sometimes numbering in the

dozens) who have tenuous connections to the underlying disputes in patent infringement suits."

H.R. Rep. No. 112-98, at 64 (2011).  The Act emphasizes that "accused infringers may not be

joined in one action as defendants or counterclaim defendants, or have their actions consolidated

for trial, based solely on allegations that they each have infringed the patent or patents in suit."

H.R. Rep. No. 112-98, at 45.  Rather, multiple different patent defendants can only be joined if

they sell the same – not merely similar – products.  H.R. Rep. No. 112-98, at 44 (permitting

joinder of claims against defendants only if they "aris[e] out of the same transaction, occurrence,

or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the ***same accused product or process***" (emphasis added)).[5]

The America Invents Act codified a well-settled understanding of the law adopted by this district and the majority of courts throughout the country: "Joinder of unrelated parties into one action is generally inappropriate where, as here, the infringement of the same patent is alleged, but the products are different." *Children's Network, LLC v. Pixfusion LLC,* 2010 WL 2640120, at *9 (S.D.N.Y. June 30, 2010); *Colt Def. LLC v. Heckler & Koch Def., Inc.*, No. 2:04-cv-258-JBF, 2004 U.S. Dist. LEXIS 28690, at *13 (E.D. Va. Oct. 22, 2004) ("*the overwhelming authority* from other jurisdictions indicates that allegations against multiple and unrelated defendants for independent acts of patent, copyright and/or trademark infringement *do not set forth claims arising from the same transaction or occurrence* within the meaning of Rule 20(a)." (emphasis added)). *See also* H.R. Rep. No. 112-98 at 64 n.61 (noting that Section 299 abrogates the construction of Rule 20(a) adopted by a minority of districts "effectively conforming these courts' jurisprudence to that followed by a majority of jurisdictions").

It is indisputable that the claims against Pioneer USA do not arise out of "***the same*** transaction or occurrence" as the claims against the remaining defendants. The relevant series of transactions for the purposes of Tramontane's claims against Pioneer USA are the series of transactions by which Pioneer USA has sold its Avic Z130 BT to its customers. These transactions involve:

- Different products;

---

[5]     Although the America Invents Act does not strictly apply to cases (such as this one) filed before its enactment, the Act did not purport to change Rule 20's requirements but rather to clarify how Rule 20 should be applied. H.R. Rep. No. 112-98 at 64 n.61 It is highly instructive that Congress endorsed the prevailing approach to joinder of patent defendants under Rule 20(a). The Act also makes clear that improperly joined defendants should not be consolidated. *See* § 299 (For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.").

- Different customers;

- Different prices;

- Different sales terms;

- Different dates; and

- Different marketing and sales forces

They are therefore indisputably not the ***same*** series of transactions as required by Rule 20.

Indeed, Tramontane's decision to accuse Pioneer USA of infringing only ***one*** of the ***two*** patents-in-suit, while claiming that codefendants Garmin International, Garmin USA, TomTom, and Magellan have infringed both, shows that there are material differences between the accused Pioneer USA product and the accused products of the remaining defendants. *Compare* Compl. ¶¶ 12-16 (alleging infringement of the '268 patent by all six defendants) *with* Compl. ¶¶ 21-23 (alleging infringement of the '775 patent by Garmin International, Garmin USA, TomTom, and Magellan, but not by Pioneer USA).

Tramontane cannot overcome this fundamental deficiency by asserting that each defendant's device infringes the same patent. As this district has recognized, as Congress recently reiterated, and as courts across the country have confirmed, an allegation that multiple different defendants may have infringed the same patent is not a sufficient basis to join those parties in the same lawsuit. *See* America Invents Act, H.R. Report 112-98 at 45 ("[A]ccused infringers may not be joined in one action as defendants …, or have their actions consolidated for trial, ***based solely on allegations that they each have infringed the patent or patents in suit***" (emphasis added)); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1372 n.6 (Fed. Cir. 2002) (third-party claims "based on infringement of the same patent" did "not aris[e] out of the same transaction or occurrence"); *Bear Creek Techs.*, 2011 WL

3626787, at *5 (concluding that defendants accused of infringing the same patent were misjoined because they were not related entities, did not sell, market or use each other's accused products, and were not acting together to infringe the asserted patent); *Colt Def.*, 2004 U.S. Dist. LEXIS 28690, at *13 (noting that *"the overwhelming authority"* from other jurisdictions holds that allegations against multiple, different defendants for independent acts of infringement of same patent or trademark are insufficient to satisfy Rule 20(a)); *Rudd v. Lux Prods. Corp. Emerson Climate Techs. Braeburn Sys., LLC*, 2011 WL 148052, at *4  (N.D. Ill. Jan. 12, 2011) ("This Court follows *the prevailing approach* of this District and numerous others that have concluded that a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent." (emphasis added)); *WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (dismissing plaintiff's claims for misjoinder under Rule 21 and noting that the "plaintiff [could not] escape the fact that it [was] suing unrelated and competing defendants for their own independent acts of patent infringement").[6]

The court's decision in *Colt Defense v. Heckler & Koch Defense* provides an instructive example.  There, plaintiff Colt Firearms accused the two defendants -- firearms manufacturers Bushmaster and Heckler & Koch -- of trademark infringement, unfair competition, and false

---

[6]     *See also Children's Network, LLC v. Pixfusion LLC,* 2010 WL 2640120, at *9 (S.D.N.Y. June 30, 2010) ("Joinder of unrelated parties into one action is generally inappropriate where, as here, the infringement of the same patent is alleged, but the products are different."); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) ("Allegations of infringement [of the same patent] against two unrelated parties based on different acts do not arise from the same transaction."); *Pergo, Inc. v. Alloc Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (severing claims for infringement of the same patent made against two different defendants); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill.1998) (holding that the joinder of three manufacturers in a suit where the same patent was alleged was improper because the claims did not arise from a common transaction or occurrence when the manufacturers were separate companies that independently designed, manufactured, and sold different products); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith,* 564 F. Supp. 1358, 1371 (D. Del. 1983) ("allegations of infringement [of the same patent] against two unrelated parties based on different acts do not arise from the same transaction"); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 974 (N.D. Ill. 1973) ("There is no allegation here that the acts of infringement [of the same patent] arise out of the same transactions or occurrences or series thereof.").

advertising.  *See* 2004 U.S. Dist. LEXIS 28690, at *11.  Despite the fact that the two defendants

were accused of infringing the same trademark, the court found that plaintiff Colt's allegations

were insufficient to meet Rule 20's joinder test because the two defendants in *Colt* were separate

companies that independently designed and sold different products:

> [Plaintiff] Colt has failed to demonstrate that [defendant] Bushmaster's
> alleged acts of infringement, false advertising and unfair competition are
> in any way related to the alleged acts of infringement committed by [co-
> defendant] Heckler & Koch.   [The two defendants] ***Bushmaster and
> Heckler & Koch are separate companies that independently design,
> manufacture, market and sell different products in competition with
> each other***.

*Id.* at *14 (emphasis added).  Because the plaintiff's claims against defendants Bushmaster and

Heckler & Koch did not arise from the same transaction or occurrence, the court granted the

defendants' motions to sever the case.  *Id.* at *16.

As recently as August 2011, this district used similar reasoning to reach the same result in

*Bear Creek Technologies v. RCN Communications*.  There, the plaintiff filed suit against a

disparate group of twenty-three defendants alleging infringement of the same patent.  2011 WL

3626787, at *1.  In considering the defendants' motion to sever, the court in that case observed

that the defendants (1) were not related entities, (2) did not use or sell one another's allegedly

infringing products, (3) were not acting in concert to infringe the asserted patent, and (4) were, in

some instances, competitors.  In granting the defendants' motion, the court held that the

plaintiff's claims against the defendants could not have arisen from the "same transaction [or]

occurrence," as required by Rule 20, because "the allegations asserted against each of the

Defendants specifically relate to ***each respective defendant's use*** of their ***own alleged infringing***

***product***."  *Id.* at *4 ("The fact that subscribers can use the alleged infringing device to place calls

to subscribers on other networks does not suggest that Plaintiff's apparatus infringement claims

for one product arise from the same transaction or occurrence (or series of transactions or

- 15 -

occurrences) as its apparatus infringement claims against other wholly unrelated defendants and their separately sold, used and marketed products."). In so ruling, the court also acknowledged that it was not required to consider concerns of judicial economy where the plaintiff could not meet the threshold finding of commonality among the defendants. *Id*. at *4.

Because the claims against Pioneer USA do not arise out of the "same transaction [or] occurrence" as required by Rule 20, this Court, like the courts in *Colt Defense* and *Bear Creek Technologies*, should sever the claims against Pioneer USA.

> **2.     Forcing Pioneer USA to Litigate With Multiple, Different Defendants Would Limit Pioneer USA's Ability to Fully Defend Itself and Will Not Enhance Efficiency.**

Rule 20's restrictions on the type of claims that may be joined are imposed with good reason. A primary purpose underlying the rule is to avoid prejudice to defendants. *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay."). Forcing Pioneer USA to litigate this case alongside four different defendants accused of infringing by selling different products would significantly constrain its ability to defend itself. As only one of five defendants – all of whom would be required to share time at depositions, hearings, and trial – Pioneer USA's ability to develop and present an individualized defense would be severely limited. Joinder would harm Pioneer USA's defense in at least the following ways:

- *Summary Judgment*: Some, if not all, of the defendants may have strong grounds to move for summary judgment of non-infringement based on the specific design or operation of their individual accused products. The number of defendants, coupled with the fast-paced nature of this forum, will reduce the chances that any one defendant's motion for summary judgment can be decided ahead of trial.

- *Expert witnesses*: Defendants will be forced either to share expert witnesses with other defendants (thereby depriving defendants of the full attention of an expert and

risking the inadvertent disclosure of confidential information among defendants) or retain five separate technical experts (thereby creating the risk that each expert's opinions will be diluted by the large number of opinions offered).

- ***Depositions***:  Defendants will be forced to share time during the key depositions – including depositions of the inventors, the prosecuting attorneys, and Tramontane's expert witnesses – thereby limiting opportunities for any given defendant to develop individualized defenses and constraining any given defendant's ability to defend itself.  For example, if the inventors of the '268 patent are only allowed to be deposed for the seven hours described in the federal rules, each defendant would be permitted less than an hour and a half to ask its own questions.

- ***Limited Opportunity to tell the Pioneer USA story***:  Because Pioneer USA will be forced to share limited trial time with the remaining defendants, Pioneer USA's opportunity to educate the jury about the company, its history, its products, and its individual defenses will be extremely limited.

The significant harm resulting from the joinder of multiple different defendants is not justified by any perceived "convenience" to the plaintiff of being able to sue so many at once. Joinder is not a plaintiff's "substantive right" – it is merely a "procedural device."  *See Saval v. BL Ltd.*, 710 F.2d 1027, 1030 (4th Cir. 1983).  As the court in *WIAV Networks* explained when severing multiple different defendants who were improperly joined in a single patent infringement suit, each defendant has a fundamental right to present an individualized defense on the issues of infringement, validity, and damages:  "[T]he accused defendants – who will surely have competing interests and strategies – are entitled to present individualized assaults on questions of non-infringement, invalidity, and claim construction."  *WIAV Networks*, 2010 WL 3895047, at *2.  To the extent that joinder interferes with this right, severance should be granted. *Aleman*, 485 F.3d at 218 n.5 (finding that a court may "deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." (citations omitted)); *WIAV Networks*, 2010 WL 3895047, at *3 (finding that, among multiple different defendants, "whatever common issues may exist from

device to device will be overwhelmed by the individual issues of claim construction, damages, willfulness, and discovery supervision").

Moreover, judicial economy is not promoted by permitting Tramontane to join a disparate group of defendants (along with their different products) together in the same action. Where each of the five different defendants will be presenting different evidence through different witnesses, it is more likely that the combination of these unrelated claims and defenses would result in greater inefficiency. *See Saval,* 710 F.2d at 1032 (holding that joinder of five different defendants "in a single action would not enhance judicial economy" where each claim arises from a different transaction or occurrence). Furthermore, it would be inefficient to have Pioneer USA participate in all of the discovery, pretrial submissions, hearings, and trial when it is being accused of infringing only one of the two asserted patents, unlike the majority of defendants who are accused of infringing both.

Indeed, any perceived efficiencies of joining the five disparate defendants would come at the expense of each defendant's right to present individualized defenses. While efficiency and uniformity are always important considerations, they do not trump a defendant's fundamental right to a fair opportunity to defend itself. As the Court in *Colt* made clear, "to the extent that considerations of judicial economy can factor into the court's decision whether to sever the claims against [a defendant], they do so only *after* the plaintiff has first satisfied the requirements of Rule 20(a)." *Colt Def.*, 2004 U.S. Dist. LEXIS 28690, at *16 (emphasis added); *Bear Creek Techs.*, 2011 WL 3626787, at *5 ("As Plaintiff admitted during oral argument, the Court need not rely on judicial economy in its decision when there is not sufficient commonality amongst the Defendants.")

**3.     Joining Pioneer USA and the Remaining Defendants Risks Significant Juror Confusion.**

- 18 -

Severance is also necessary and appropriate to avoid the risk of juror confusion created by Tramontane's attempted joinder of multiple, different defendants, who offer different products.

As this case is presently constituted, there are two patents, 70 claims, five different defendants, five different sets of witnesses, and potentially millions of documents and other evidence relating to the six accused navigation devices. (Compl. ¶¶ 12-16 and 20-26). Each defendant will present different arguments, specific to its own accused systems and its own particular circumstances. No jury can reasonably be expected to keep that number of defendants, accused systems and arguments straight. There is thus a high risk that jurors will confuse the defendants' arguments and defenses and reach decisions regarding one defendant's products based on evidence related to the product of a different defendant. *See Advamtel*, 105 F. Supp. 2d at 515 (severing unrelated long distance carrier defendants because, where "the nature of the defendants' cases is different, joinder does not necessarily streamline the resolution of the case, and indeed may lead to confusion at trial"); *Colt*, 2004 U.S. Dist. LEXIS 28690, at *15 (granting motion to sever in part because "there is the possibility of jury confusion over the evidence required to prove" separate infringement allegations against two different defendants with two different products); *Saval*, 710 F.2d at 1031 (finding that severance was justified to keep facts straight pertaining to separate claims).

Moreover, even if a jury could keep the multiple defendants, multiple arguments and multiple products straight, it is nevertheless likely that positions taken by one defendant will affect the jury's perception of the positions raised by the remaining defendants. Although the defendants have a common interest in defending themselves against Tramontane's allegations,

they will undoubtedly have different views as to the best overall strategy for doing so. For

example:

- *Invalidity*: Defendants may have different views on issues such as the most relevant prior art to present to the jury, what the prior art discloses, or the most effective combinations of art to present under 35 U.S.C. § 103.

- *Damages*: Defendants may have significantly different positions on issues such as damages if, for example, they had different policies on licensing, or if they have different revenues. Some defendants may enter into running royalty licenses, others may adopt a lump sum licensing approach, and still others may have a no-license policy.

- *Noninfringement*: By virtue of offering different products, some defendants may focus on the omission of certain elements of the asserted claims, whereas others may concede that those same elements are satisfied but argue that other elements are missing.

Pioneer USA's defense will unavoidably be affected by the positions taken by other

defendants – over whom it has no control – regardless of whether Pioneer USA supports those

positions or not. If just one of the multiple defendants takes an unreasonable position on a prior

art reference, for instance, it will very likely color the jury's view of the remaining defendants'

invalidity arguments. *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D.

Del. 2004) (granting motion to sever where one defendant's weaker defenses are likely to

negatively effect juror's perception of another defendant). Courts have granted severance under

circumstances presenting a far lower risk of juror confusion than exists here. In *Philips

Electronics North America*, for instance, the court severed patent infringement claims against

only two different defendants, noting that one defendant's lack of preparation could adversely

affect the jury's perception of its co-defendant:

> [T]here is a substantial risk of prejudice to [codefendant] CMT were the
> jury to believe that [codefendant] CMT is somehow linked to
> [codefendant] Hango. Because [codefendant] Hango is [also] accused of
> patent infringement and will [likely offer a weak defense] at trial, there is
> the real prospect that the jury will assume that [codefendant] CMT is

> liable for patent infringement by association with [codefendant] Hango.
> The interests of justice will thus be served by severing CMT and Hango
> and conducting separate trials.

220 F.R.D. at 418.  Here, where there are two different patents, 70 different claims, five different

defendants and six different accused products, a far greater risk of juror confusion exists.

### B.      Once Severed, Tramontane's Claims Against Pioneer USA Should be Transferred to the Central District of California.

Motions to transfer are governed by 28 U.S.C. § 1404, which provides that a district court

may transfer a case to "any other district or division where it might have been brought" if the transfer

is "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  In

the Fourth Circuit, a district court makes two inquiries to determine whether transfer is

appropriate:  (1) whether the claims might have been brought in the transferee forum (here, the

Central District of California), and (2) whether the interest of justice and convenience of the

parties and witnesses justify transfer to that forum.  *Koh,* 250 F. Supp. 2d at 630.  The first

inquiry requires the moving party to demonstrate that "venue and personal jurisdiction would

have been proper in the transferee forum."  *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F.

Supp. 2d 924, 930 (E.D. Va. 2005).  The second inquiry requires an examination of four factors:

(1) the plaintiff's choice of forum; (2) witness convenience, (3) the convenience of the parties,

and (4) the interest of justice.  *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va.

2007).

The relevant factors here compel transfer of this case to the Central District of California.

Neither Pioneer USA nor Tramontane has any genuine connection to the Eastern District of

Virginia.  Instead, Pioneer USA's relevant connections are to the Central District of California,

where Tramontane's CEO and outside counsel also reside.  Over the last two years, the Federal

Circuit has repeatedly held that where, as here, the parties' primary contacts are to another

jurisdiction, the district court should transfer to that jurisdiction.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (holding that transfer was warranted when defendant identified a significant number of witnesses in the transferee venue, and no witnesses resided in plaintiff's chosen forum); *In re Morgan Stanley*, 2011 WL 1338830, at *2 (Fed. Cir. Apr. 6, 2011) (holding transfer to district was warranted where majority of defendants resided); *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (finding that "the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen forum," weighs in favor of granting transfer); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

**1.   Tramontane Could Have Filed This Action in the Central District of California.**

The first prong of the transfer inquiry is satisfied because Tramontane could have filed its complaint in the Central District of California.  Because Pioneer USA's headquarters is located in the Central District of California, it is properly subject to personal jurisdiction and venue in California.  *See Pragmatus AV, LLC*, 769 F. Supp. 2d at 994 (a corporation is subject to personal jurisdiction in the district where its headquarters exist); 28 U.S.C. §§ 1391 and 1400(a); *U.S. Ship Mgmt., Inc.*, 357 F. Supp. 2d at 930.

**2.   The Four Venue Factors Favor Transfer to Central District of California.**

**a.   Tramontane's Choice of This Forum Weighs in Favor of Transfer to the Central District of California.**

**i.   The Eastern District of Virginia is Not a True Home Forum for Tramontane**

The Eastern District of Virginia should not be viewed as Tramontane's "home forum" for the purposes of a transfer analysis. As described above, Tramontane's only apparent connection with the Eastern District of Virginia is its litigation-inspired decision to incorporate there in May 2011 shortly before (a) acquiring the '268 patent, and (b) filing this lawsuit. Ex. 1 at 2 (Lexis Report on Tramontane); Ex. 2 at frame 271 (Excerpts of '268 Patent Assignment Records (showing assignment of '268 patent to Tramontane on 7/12/11)). Tramontane's alleged "principal place of business" – *i.e.*, Suite 100 at 2331 Mill Road in Alexandria, VA – is in fact no principal place of business at all. Instead, this "suite" is a virtual office space that is home to over ***twenty*** different companies who pay a monthly fee of several hundred dollars for a variety of amenities that permit an entity ***outside*** the Eastern District of Virginia to maintain the appearance of having a presence ***inside*** the Eastern District of Virginia. Ex. 7 (photographs of the complete listing of users of Suite 100 at 2331 Mill Road, Alexandria, VA, which listing does not even include Tramontane). Specifically, in exchange for a monthly fee of $150, customers (like Tramontane) who use "DaVinci Virtual Office Solutions" can take advantage of the following "features":

- "Prime Business Address"
- "Mail and Package Receipt"
- "Lobby Greeter"
- "Lobby Directory Listing (extra fee where avail.)"
- "Mail Forwarding / Shipping Services (extra fee)"
- "Conference Rooms – average fee $25-40 per hr (may vary by location)"
- "Day Time Office  -- average fee $10-35 per hr (may vary by location)"
- "License Hanging (extra fee)"

Ex. 6 at 3 (website printout from www.davincivirtual.com showing "virtual office features" for

Suite 100 at 2331 Mill Road, Alexandria, VA).  A visit to the lobby of 2331 Mill Road shows

that Tramontane's contacts with this district were not even strong enough to justify paying the

"extra fee" necessary to have its name listed in the lobby directory with the other twenty entities

sharing its suite number.  Ex. 7 (photographs of the complete listing of users of Suite 100 at 2331

Mill Road, Alexandria, VA, which listing does not include Tramontane).

Courts have given little weight to a plaintiff's choice of forum where, as here, the

plaintiff's incorporation is so transparently for strategic litigation purposes.  In *Pragmatus AV,*

*LLC v. Facebook*, this Court granted the defendants' motion to transfer the case to California for

this very reason:

> Pragmatus does not contest defendants' description of it as a "non-practicing entity," meaning that it does not research and develop new technology but rather acquires patents, licenses the technology, and sues alleged infringers.  Pragmatus's main line of business is enforcing its intellectual property rights, and a large part of that task involves threatening to file lawsuits. . . In sum, the only connection between the Eastern District of Virginia and this plaintiff is that Pragmatus was formed in Alexandria a week before it acquired the patent portfolio and five months before it filed this lawsuit.  Although plaintiff's choice of forum weighs against transfer, this factor will be given minimal weight in light of the weak connection between the plaintiff and the Eastern District of Virginia.

769 F. Supp. 2d at 995.  Like the plaintiff in *Pragmatus*, Tramontane is a non-practicing entity,

formed only months before filing suit who, based on publicly available information, has no

relevant connection to this district.  Ex. 1 at 2 (Lexis Report on Tramontane). Therefore, this

Court should accord no weight to Tramontane's choice of forum.  *See also In re Microsoft Corp.*,

630 F.3d at 1365 (ordering transfer of a patent infringement action out of the Eastern District of

Texas where the plaintiff had been incorporated in the district for only 16 days before filing suit).

ii.     **The Center of the Accused Activity is in the Central District of California**

It is well settled that where a plaintiff selects a forum with "little connection" to the dispute, its forum choice "weigh[s] in favor of transfer to a venue with more substantial contacts." *Koh*, 250 F. Supp. 2d at 633. The preferred forum in patent infringement cases is "'the center of accused activity,' which is the area "as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). Here, the United States "hub of activity centered around" the allegedly infringing device is the Central District of California, where Pioneer USA warehouses the majority of its navigation systems and from where it coordinates the sales and marketing of these systems – not the Eastern District of Virginia. Numerous decisions from this district support this conclusion.

In *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938-39 (E.D. Va. 2001), for example, the court granted the defendant's motion to transfer where, as here, the transferee district had a much closer connection to the parties and the dispute. The court noted that the Eastern District of Virginia was not the plaintiff's home forum, that the accused product was "designed and produced in Hawaii," that the defendant's headquarters and principal place of business was in Hawaii, that "the key defense witnesses for the alleged infringement" all lived in Hawaii, and that the "access to proof relating to the action (the primary manufacturing site, design records, other design engineers) is in Hawaii." *Id.* at 939. Concluding that "Hawaii [was] the center of the allegedly infringing activity," the court transferred the case to that district. *Id.*

Similarly, in *Agilent Technologies, Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 (E.D. Va. 2004), the court granted the defendant's motion to transfer to the Southern District of New York where the plaintiff had limited connections to this jurisdiction. In so ruling, the court

- 25 -

found that the plaintiff had no offices in Virginia, the relevant witnesses were not located in Virginia, and none of the relevant documents were located in Virginia.  *Id.* at 327 ("Plaintiffs' witnesses do not live or work in Virginia, and it does not appear that one material document is located in this district.").

Most recently, in *Pragmatus,* this Court granted the defendants' motion to transfer where, as here, the plaintiff's "connection to this district [was] tenuous."  769 F. Supp. 2d at 995.  This Court noted that defendants were headquartered in California and that "most of their sources of proof, including witnesses and documents, are in that district."  *Id.*  Specifically, the Court found significant that "most of the employees with knowledge of the allegedly infringing technology also are in the Northern District of California," whereas the plaintiff had only one employee in Virginia who would potentially participate in the litigation.  *Id.* at 995.

For Tramontane's case against Pioneer USA, the center of accused activity and the preferred forum is the Central District of California.  This is where Pioneer USA's headquarters are located, where Pioneer USA warehouses the majority of its navigation devices, where the coordination of the sale and distribution of the its navigation devices occurs, and where Pioneer USA's relevant witnesses and documents are located.  (Pioneer USA Aff. ¶¶ 2, 9, 12, 13.)  Accordingly, Tramontane's decision to litigate in the Eastern District of Virginia – a forum with "little or no relation" to Tramontane's allegations of infringement against Pioneer USA – weighs strongly in favor of transfer to the Central District of California.

>   **b.      The Eastern District of Virginia is an Inconvenient Forum for Third Party Witnesses.**

Almost every known third-party witness in this case resides ***outside*** of the Eastern District of Virginia.  Of the forty-one known potential third-party witnesses – a number that includes the two inventors, the three prosecuting attorneys, the two prior assignees of the '268

patent, and the authors of the prior art of record – *__only one resides in Virginia.__*  *See supra section* § II(D).  The location of these third-party witnesses outside the Eastern District of Virginia reinforces the absence of any connection between this dispute and Virginia and weighs heavily in favor of transfer.  *See Original Creatine*, 387 F. Supp. 2d at 571 (finding the existence of third-party witnesses in multiple forums, but not in Virginia, "serves to underscore the lack of connection that this case, the parties and the witnesses and evidence have to the Eastern District of Virginia").

c.      **The Central District of California is More Convenient for the Parties.**

The vast majority of Pioneer USA's employees – over 85% of the total personnel – work at the company's Long Beach, California headquarters, which are located in the Central District of California.  (Pioneer USA Aff. ¶ 8).  This number includes numerous potential witnesses, including those involved in the sale and marketing of the Avic Z130BT.  Requiring these potential witnesses to travel over 2500 miles to the Eastern District of Virginia would be inconvenient and result in significant, unnecessary expense to Pioneer USA.  *See Acterna*, 129 F. Supp. 2d at 939 (where transferee forum is the center of the allegedly infringing activity, witness convenience favors transfer).

Only two Pioneer USA employees reside in Virginia.  One works for a division of Pioneer USA that has no involvement in the sale or marketing of navigation devices.  The other is one of over twenty sales managers who deal not only with navigation systems, but also with dozens of consumer electronics products having nothing to do with navigation systems.  (Pioneer USA Aff. ¶ 9).  Consequently, any relevance he may have to Tramontane's claims against Pioneer would be minimal and likely cumulative.  The vast majority of documents for Pioneer

USA are located in California.  (Pioneer USA Aff. ¶ 13).  In addition, three of the six defendants – Pioneer, Mio, and Magellan – have their principal places of business in California.

As described in detail above (*see supra* at §III(B)(2)(a)(i)), Tramontane has no genuine connection to the Eastern District of Virginia.  Although no public information exists regarding the total number of employees working for Tramontane, a current Lexis report and a 2008 SEC filing indicate that the company's CEO, Douglas B. Croxall, resides not in the Eastern District of Virginia, but in Los Angeles County, which is in the Central District of California. Ex. 2 at frame 272 (Excerpts of '268 Patent Assignment Record signed by Tramontane CEO Douglas B. Croxall); Ex. 8 at 2 (Lexis Report on Douglas B. Croxall); Ex. 11 at 1 (2008 SEC filing).[7] Moreover, it is highly unlikely that Tramontane maintains any relevant documents – such as those relating to the conception of the alleged invention – in the Eastern District of Virginia given that Tramontane acquired the patent from inventors and former owners based in Indiana and Michigan only a few months before this lawsuit was filed.  Ex. 2 at frames 271-72 (Excerpts of '268 Patent Assignment Record showing assignment of '268 patent to Tramontane on 7/12/11).

As a result, litigating in the Central District of California is at least as convenient for Tramontane as it is litigating in Virginia.  Tramontane chose to litigate in a foreign forum by filing in the Eastern District of Virginia in the first instance – it can just as easily do so in the Central District of California where an actual connection to this dispute exists.  *See Agilent Techs.*, 316 F. Supp. 2d at 328 (holding transfer appropriate where "[p]laintiff has already burdened its witnesses with the hardships of traveling outside of [the plaintiff's] home forum."). For Tramontane, the only cost of litigating in the Central District of California will be the

---

[7]        *See supra* at n. 4.

forfeited several-hundred dollar fee it pays for its virtual office space in Alexandria.  For Pioneer

USA, the cost of litigating in the Eastern District of Virginia rather than the Central District of

California is far greater.  The balance of witness convenience, therefore, clearly favors transfer.

*See Pragmatus*, 769 F. Supp. 2d at 997 (holding transfer warranted to district where numerous

potential witnesses and sources of evidence existed).

> **d.    The Interest of Justice Favors Transfer to the Central District of California.**

Tramontane appears to have selected this forum, not out of convenience, but in an

attempt to leverage this district's well-known, fast-paced docket for its own strategic gain by

increasing the pressure on the defendants to settle.  This Court has consistently found such

attempts at forum shopping to be against the interests of justice, warranting transfer to a district

with more substantial connections to the dispute.  In *Pragmatus*, for example, this Court warned

against allowing plaintiffs to litigate claims with little connection to this jurisdiction merely to

take advantage of the rocket docket:  "When a plaintiff with no significant ties to the Eastern

District of Virginia chooses to litigate in the district primarily because it is known as the "rocket

docket," the interest of justice 'is not served.'"  *Id.* at 997 (internal citation omitted); *see also*

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va.

2000) ("This Court cannot stand as a willing repository for cases which have no real nexus to

this district.  The rocket docket certainly attracts plaintiffs, but the Court must ensure that this

attraction does not dull the ability of the Court to continue to act in an expeditious manner.").

The law is clear:  A plaintiff with such a tenuous connection (if any) to the Eastern District of

Virginia should not be permitted to litigate in this jurisdiction merely to take advantage of the

"rocket docket."  Tramontane's claims against Pioneer USA – which indisputably have no

connection to the Eastern District of Virginia – do not belong in this jurisdiction.  This case, therefore, should be transferred to the Central District of California.

## IV.   <u>CONCLUSION</u>

Tramontane's attempt to join at least five different defendants in this single action is improper.  Tramontane does not even allege – let alone make the showing required by Rule 20 – that the claims against Pioneer USA bear any relevant connection to the claims against the remaining defendants.  Severance is therefore appropriate.

Once severed, this district's lack of a meaningful connection to the dispute becomes clear.  Indeed, Tramontane has not alleged or identified any legitimate connection between Virginia and the claims against Pioneer USA.  As a result, the relevant factors compel transfer of the claims against Pioneer USA to the Central District of California.

Pioneer USA respectfully requests that the Court sever Tramontane's claims against Pioneer and transfer the severed claims to the Central District of California.

Respectfully submitted,


 _/s/  D. Bradford Hardin, Jr._____
D. Bradford Hardin, Jr. (Va. Bar No. # 76812)
Grant K. Rowan (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR,
LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
bradford.hardin@wilmerhale.com
grant.rowan@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Patrick M. Callahan (*pro hac vice*)
Thaila K. Sundaresan *(pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR,
LLP
60 State St.

Boston, MA 02109
(617) 526-6000
michael.summersgill@wilmerhale.com
patrick.callahan@wilmerhale.com
thaila.sundaresan@wilmerhale.com

*Attorney for Pioneer Electronics (USA), Inc.*

Dated:  November 3, 2011

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of November, 2011, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT PIONEER ELECTRONICS (USA), INC.'S MOTION TO SEVER AND TRANSFER was electronically filed with the Clerk of the Court using the CM/ECF system, and served via hand delivery, upon the following parties:

**Amy Sanborn Owen**
Cochran & Owen LLC
8000 Towers Crescent Drive
Suite 160
Vienna, VA  22182
aowen@cochranowen.com

**Benje Allen Selan**
Cochran & Owen LLC
8000 Towers Crescent Drive
Suite 160
Vienna, VA  22182
bselan@cochranowen.com

*Attorneys for Plaintiff, Tramontane IP,
LLC*

**Syed Mohsin Reza**
Troutman Sanders LLP
1660 International Drive
Suite 600
McLean, VA  22102
Mohsin.reza@troutmansanders.com

**Mary Catherine Zinsner**
Troutman Sanders LLP
1660 International Drive
Suite 600
McLean, VA  22102
Mary.zinsner@troutmansanders.com

**Billy Bernard Ruhling, II**
Glassman & Michael PLLC
1950 Old Gallows Road, Suite 700
Vienna, VA  22182
Bill.ruhling@troutmansanders.com

*Attorneys for Defendants, Garmin Int'l, Inc.; and
Garmin USA, Inc.*

**John Scott Davidson**
Davidson Berquist Jackson & Gowdey
LLP
4300 Wilson Blvd.
Suite 700
Arlington, VA  22203
jsd@dbjg.com

*Attorney for Defendants, MiTAC Digital
Corporation d/b/a Magellan; and Mio
Technology USA Ltd.*

**John P. Corrado**
Morrison & Foerster LLP (DC)
2000 Pennsylvania Avenue, N.W.
Suite 6000
Washington, DC  20006-1888
jcorrado@mofo.com

**John Alexander Trocki, III**
Morrison & Foerster LLP (McLean)
1650 Tysons Blvd., Suite 400
McLean, VA  22102
jtrocki@mofo.com

**Joshua Alan Hartman**
Morrison & Foerster LLP (DC)
2000 Pennsylvania Avenue, N.W.
Suite 6000
Washington, DC  20006-1888
jhartman@mofo.com

*Attorneys for Defendant, Tom Tom, Inc.*

*/s/  D. Bradford Hardin, Jr.*
D. Bradford Hardin, Jr. (Va. Bar No. # 76812)
WILMER CUTLER PICKERING  HALE AND DORR, LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
bradford.hardin@wilmerhale.com